## UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
#### ORLANDO DIVISION

**ROCKY W. STANDRIDGE,**

                    **Plaintiff,**

**-vs-**                                                   **Case No.  6:12-cv-254-Orl-22DAB**

**COMMISSIONER OF SOCIAL
SECURITY,**

                    **Defendants.**

_____

# Memorandum Opinion & Order

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying his claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case.  Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **REVERSED and REMANDED**.

## I.      BACKGROUND

### A.      Procedural History

Plaintiff filed for a period of disability, DIB[1] and SSI benefits on September 14, 2010, alleging an onset of disability on November 1, 2009[2], due to human immunodeficiency virus ("HIV") and side

---

[1]Plaintiff's date of last insured is December 31, 2013.  R. 12.

[2]Plaintiff filed a form that corrected the alleged onset date to May 1, 2010 (R. 106- May 23, 2011) but that appears to be before the hearing on July 11, 2011 when the alleged onset date of November 2009 was discussed.

effects of medications including dizziness, fatigue, diarrhea, shortness of breath, and concentration and memory problems; heart attack and quadruple by-pass, liver problems, hernia, and depression[3]. R. 31, 36, 57-59, 115, 117, 121, 165 171, 252. His application was denied initially and upon reconsideration. Plaintiff requested a hearing, which was held on July 11, 2011, before Administrative Law Judge Kelley Fitzgerald (hereinafter referred to as "ALJ"). R. 26-55. In a decision dated July 27, 2011, the ALJ found Plaintiff not disabled as defined under the Act through the date of her decision. R. 7-20. Plaintiff timely filed a Request for Review of the ALJ's decision, which the Appeals Council denied on January 17, 2012. R. 1-3. Plaintiff filed this action for judicial review on February 16, 2012. Doc. 1.

### B.    Medical History and Findings Summary

Plaintiff was 48 years old on the date of the ALJ decision. R. 20, 29. Plaintiff had a limited education, and testified he had completed the 6th grade, although other records submitted he indicated he had a tenth grade education. R. 19, 29. Plaintiff last worked as a manager at a shoe store.

Plaintiff's medical history is set forth in detail in the ALJ's decision. Plaintiff was diagnosed with human immunodeficiency virus (HIV) and received disability insurance benefits beginning in 1996. R. 161, 171. By April 2000, his health improved and he was able to begin working, and discontinued receipt of disability benefits. R. 166. Plaintiff completed disability reports indicating that he worked until August 2008, when he was terminated. R. 158, 165. He then received unemployment benefits until November 1, 2009, which coincides with his alleged onset date. R. 158.

After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from HIV, coronary artery disease status post-quadruple coronary artery bypass graft

---

[3]Plaintiff was previously on Social Security Disability in 1998 or 1999, but improved with the AIDS medications enough to return to work in 2001. R. 124-26; *see* R. 161. Plaintiff's last work day was August 18, 2008 but he received unemployment until November 1, 2009; after that he became too ill to work. R. 158.

(2006), status post inguinal hernia repair with residual limitations (September 2010) and major depressive disorder, which were "severe" medically determinable impairments, but were not impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.  R. 12-14.

The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform sedentary work with limitations: occasional stair and ramp climbing, and no ladder, rope or scaffold climbing, and should avoid concentrated exposure to workplace hazards such as exposed machinery or unprotected heights; limitations to simple, routine, repetitive tasks in a stable environment with no ongoing changes and no goal setting. R. 14.  Based upon Plaintiff's RFC, the ALJ determined that he could not perform past relevant work.  R. 19-20.  Considering Plaintiff's vocational profile and RFC, and based on the testimony of the vocational expert ("VE"), the ALJ concluded that Plaintiff could perform work existing in significant numbers in the national economy as document preparer, addresser and surveillance system monitor.  R. 19-20, 51-52.  Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time from November 1, 2009 through the date of the decision.  R. 20.

Plaintiff now asserts three main points of error.  First, he argues that the ALJ erred by relying on the vocational expert's (VE) testimony in finding that Plaintiff was capable of performing sedentary work, based on an incomplete hypothetical.  Second, he contends the ALJ erred by finding he had the RFC to perform sedentary work contrary to treating doctors' statements.  Third, Plaintiff asserts that the ALJ erred by improperly evaluating his credibility.  For the reasons that follow, the decision of the Commissioner is **REVERSED and REMANDED**.

## II.      STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings

are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him

from doing other work that exists in the national economy, then he is disabled.   20 C.F.R. § 404.1520(f).

## III.    ISSUES AND ANALYSIS

### A.    RFC and the treating physicians' opinions

Plaintiff claims that the ALJ should not have found him able to perform sedentary work contrary to the limitations assigned by his psychologist Dr. Mossler and his treating physician Dr. Rusiecki.  The Commissioner contends that substantial evidence supports the weight the ALJ gave to the opinions of the treating psychiatrist and physician.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite his impairments.  20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997).  The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof.  *Id.*  Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

Plaintiff argues that the ALJ gave inadequate reasons for rejecting the opinion of  Dr. Rusiecki, an infectious disease physician, whose opinion that Plaintiff could not work was supported

by other evidence of record in that Dr. Rusiecki treated Plaintiff for HIV and prescribed medications over a long period of time.

The ALJ gave no weight to Dr. Rusiecki's opinion, who opined that the Plaintiff was disabled or unable to engage in full-time work activity since May 2010.  R 18.  The ALJ cited the Social Security Regulations regarding physician's statements that a claimant is disabled of unable to work, such as Dr. Rusiecki's opinion, which are not medical opinions under the Social Security regulations, but rather, are legal conclusions left to the Administrative Law Judge (20 CFR § 404.1527(e)(1) and Social Security Ruling 96-5p).  R. 18.  The ALJ nevertheless considered Dr. Rusiecki's conclusion to determine the extent to which it was supported by the record as a whole or contradicted by persuasive evidence and found: "Dr. Rusiecki's conclusion appears to be a reiteration of the claimant's statements to him; particularly because this opinion is inconsistent with his own treatment notes, and is inconsistent with his February 2011 opinion that the claimant is able to maintain a normal pace and sustain physical activities (Exhibit 13F [R. 651]). There is no evidence of exacerbation of symptoms since February 2011." R 18.

Plaintiff points to Dr. Rusiecki's records from April 2011 that note Plaintiff was suffering from HIV infection and peripheral neuropathy. R. 671-72. He argues that there are several references in Plaintiff's records reporting Plaintiff's diagnosis of HIV and its physical effects along with apparent affects from medication to support these conclusions. Doc. 26 at 24-25 (citing R. 259-96, 410, 411-12, 627-31, 651-52, 661, 671-74, 689). Plaintiff argues that Dr. Rusiecki had full knowledge of the Plaintiff's physical condition and had the opportunity to observe Plaintiff during his long-term treatment.   Plaintiff points to Dr. Rusiecki's response on a SSA Treating Source Cardiac Questionnaire, in February 2011, that Plaintiff was limited due to his cardiac condition and *limited* in his ability to maintain a normal pace and sustain physical activities. R. 651. Plaintiff contends that

Dr. Rusiecki's opinion was consistent between February 2011 and April 2011 that Plaintiff could not work.

The ALJ's finding and Plaintiff's central argument are based on polar opposite interpretations of the *same question* on the SSA Treating Source Cardiac Questionnaire (R. 650), which Dr. Rusiecki completed in February 2011.  The preprinted portions of the Questionnaire are included here exactly as they appear on the form:

> 3.    Please mark any areas of limitations the patient experiences related to his/her cardiac condition:
> __Standing    __ Walking    __ Sitting    __Lifting    __ Carrying
>  X  Ability to Maintain a Normal Pace and Sustain Physical Activities
>
> **Please explain any positive responses above and provide examples:**
>
> Pt is status post CABG x 3 [coronary artery bypass graph - triple[4]].  Has SOB [shortness of breath] associated with his condition.

R. 651 (bold in original).

Dr. Rusiecki clearly checked off "Ability to Maintain a Normal Pace and Sustain Physical Activities" in response to the "area of limitation" for which the patient experienced limitations.  R. 651.  The question clearly asked about Plaintiff's *limitations*, yet the ALJ erroneously interpreted Dr. Rusiecki's checked-off response as "his February 2011 opinion that the claimant *is able* to maintain a normal pace and sustain physical activities (Exhibit 13F)," when a careful reading of the form indicates that Dr. Rusiecki was indicating his opinion that Plaintiff's "ability to maintain a normal pace and sustain physical activities" was limited with "shortness of breath."  R. 651.  Consistent with his response to Question 3, where the next question on the SSA Questionnaire asked if the patient experienced certain symptoms (from a list), Dr. Rusiecki checked off "Angina Equivalent (Dyspnea, SOB [shortness of breath])."  R. 651 (Question 4).

---

[4]Other records report Plaintiff had a quadruple by-pass (R. 673), as the ALJ noted in her decision, but the extent of the by-pass as triple or quadruple makes no difference for purposes of this analysis.

The Commissioner concedes that the ALJ "apparently overlooked the directions on the form" and acknowledges that "Dr. Rucieski actually indicated Plaintiff had limitations in the ability to maintain a normal pace and sustain physical activities," but argues that since the ALJ articulated two other valid and "factually supported" reasons for according Dr. Rucieski's opinion no weight, this error was harmless. Doc. 27 at 15-16.  While the ALJ stated as an additional reason for rejection of Dr. Rusiecki's opinion that it "appeared to be a reiteration of claimant's statements to him,"  Dr. Rusiecki did note specific conditions on an official form regarding Plaintiff's "manifestations of HIV."  R. 670-72.

In April 2011, Dr. Rusiecki filled out a form as Plaintiff's "Infectious Disease Specialist" detailing symptoms of Plaintiff's HIV condition – as opposed to his cardiac condition – noting Plaintiff's initial diagnosis was in 1995 and recent test results from the Western Blot test in September 2005 supported the diagnosis. R. 671.  Dr. Rusiecki noted Plaintiff suffered from Herpes simplex virus, and his HIV caused peripheral neuropathy and facial wasting. R. 672.  Where the form asked, "Please indicate the means in which the manifestations of the HIV have been medically documented," Dr. Rusiecki checked "Medical history, clinical and laboratory findings" and under results noted: "cardiac bypass x 4, 2006, CAD [coronary artery disease], lipoptrophy,  hernia, recent w/u [work-up] chest tightness."  R. 673.  Under "Statement of patient's ability to perform full-time work," Dr. Rusiecki checked the statement: "It is my opinion that the patient cannot engage in full-time work activity since 5/10 (onset date)." R. 673.  The objective medical testing ordered by Dr. Rusiecki, and the results noted in the record supported his opinion.  Moreover, the ALJ failed to give any detailed description of which portions exactly in the treatments notes were merely a "reiteration of claimant's statements" (R. 18) such that it should be discounted even though it is the treating physician's medical opinion.  As the Commissioner acknowledges, in March 2011, Dr. Rusiecki noted Plaintiff's dyspnea/ shortness of breath and "numbness/weakness" in his extremities.  R. 674.  Plaintiff testified he

experienced numbness, tingling and itching in his hands, arms, feet and legs, and had been prescribed medication[5] for it.  R. 43-44, 46.  Dr. Rusiecki noted that Plaintiff also complained of chest tightness for one month and had been to the Emergency Room; he had been scheduled for angiograph but cancelled due to lack of insurance.  R. 674.

The other reason the Commissioner argues was a sufficient basis for the ALJ to give Dr. Rusiecki's opinion no weight – that it was contradicted by the treatment notes – also has no factual citations or discussion but just the ALJ's general reference to "treatment notes."  R. 18.  The Commissioner cites a few examples sprinkled in the treatment notes, such as "Patient states he is improving" (R. 627), and "Patient has no significant complaints."  R. 604.  As an initial matter, the Commissioner cannot advance findings that were not put forth by the ALJ and these cannot be used by the court to affirm the final administrative decision.  "If an action is to be upheld, it must be upheld on the same bases articulated in the agency's order."  *Baker v. Comm'r of Soc. Sec.,* 384 Fed. Appx. 893, 896 (11th Cir. June 23, 2010) (citing *FPC v. Texaco Inc.,* 417 U.S. 380, 397, 94 S.Ct. 2315, 41 L.Ed.2d 141 (1974)).  Moreover, treatment notes of Dr. Rusiecki and Dr. McNair (Plaintiff's primary care physician) document his complaints of fatigue on a daily basis, decreased energy, nausea, dizziness, and headaches at appointments in June, August, September 2010 into the early part of 2011.  Dr. McNair noted the dizziness could be secondary to Plaintiff's medications.  R. 410-12, 627-31, 661, 674, 689.  The ALJ's decision to give no weight to the opinion of Dr. Rusiecki was not based on substantial evidence.

The Commissioner correctly points out that Dr. Rusiecki's opinion does not address the period between November 1, 2009–Plaintiff's alleged onset date–and May 2010, the date he first began treating Plaintiff and, thus, his opinion that Plaintiff's was disabled at that point.  On remand the ALJ will consider the treatment records from before 2010 (Exhibits 1F to 4F, 10F, 11F) to determine the

---

[5]Following the hearing his representative identified the medication Dr. Rusiecki prescribed for neuropathy. R. 245.

onset date if appropriate.  Dr. Warner, who treated Plaintiff in October-December 2009, noted Plaintiff's HIV infection was stable, but he was suffering from facial wasting; his coronary artery disease status post bypass was "directly HIV related" and the doctor was recommending approval for funding from a cardiology followup because Plaintiff was "unfortunately intolerant to statin therapy which would've been beneficial."  R. 448.

Plaintiff also argues that the ALJ should not have rejected the opinion of Dr. Mossler, Plaintiff's treating psychologist, who opined that Plaintiff's anxiety and depression were debilitating to his daily functioning.  The ALJ found "Dr. Mossler's opinion is given no weight because it is conclusory and not supported by the mental status exam or any rationale, and because it is inconsistent with the objective medical evidence of record and not supported by the record as a whole."  R 18. Plaintiff contends that Dr. Mossler's opinion was not an isolated opinion but consistent with the record as a whole and the ALJ failed to give adequate reasons for rejecting his opinion.

Plaintiff raises other related issues with regard to the omission of certain mental health limitations in the hypothetical to the VE and the ALJ's findings on Plaintiff's credibility regarding his limitations.  Plaintiff argues that the ALJ's hypothetical to the VE was deficient in that it did not contain all of his mental limitations, and failed to comply with *Winschel v. Commissioner of Social Security*, 631 F.3d 1176 (11th Cir. 2011).  Plaintiff additionally asserts that the ALJ erred in evaluating his credibility regarding his symptoms which included fatigue, dizziness, and memory issues.  The ALJ discounted Plaintiff's statements of his subjective complaints because she found he had made "inconsistent statements," which Plaintiff argues are related to his memory and/or concentration problems.  *See* R. 17.  The ALJ considered Plaintiff's demeanor at the hearing to be "uncooperative" because he "frequently presented as unable to answer [her] questions due to alleged memory problems," and found "such problems were not corroborated by the medical evidence of record."  R. 17.

Plaintiff argues that he has been diagnosed with several mental health disorders – depression, an affective disorder, and dysthymia – as well as physical diseases of heart disease and HIV, and has been prescribed multiple medications. R 12, 417-18, 421-34, 670.   Plaintiff argues that his records reference hospitalizations due to chest pain and other medical conditions, and Dr. Mossler[6], his treating psychiatrist, had the opportunity to observe the Plaintiff personally and evaluate his medications, demeanor, thinking processes, judgment, thought content, mood, affect, orientation, and other issues concerning the Plaintiff's mental health status that, Plaintiff contends, the ALJ should not have disregarded.  R. 666-70.  Plaintiff also points to the opinion from the consultative psychological examiner and the agency non-examining psychologist, who opined that Plaintiff had at the least moderate limitations in the plaintiff's ability to function in multiple areas.  R. 417-18, 421-34.

Although Dr. Mossler completed a mental status examination and assessed Plaintiff as having an unremarkable memory and good concentration on a check the box form (R. 669), at least one other treating physician, Dr. Warner, noted in August 2009 "Plaintiff obviously had a memory cognitive deficit on history taking" and planned to call for Plaintiff's records regarding the memory deficit.  R. 451-52.  Dr. Oatley, who performed the consultative mental health examination, diagnosed Plaintiff with Dysthymic Disorder "as indicated by years of feeling sad, low self-esteem, sleep difficulties, feeling helpless, and poor appetite."  R. 416.  He noted that Plaintiff reported having no energy to do routine household chores and would become confused preparing meals.  R. 416.  There were notes in the records that Plaintiff complained to various physicians that he was suffering from difficulties as a result of the medications and/or those medical conditions including fatigue, chest pain, nausea, dizziness, and insomnia. Doc. 26 (citing 259-96, 354-59, 410, 448-49, 504-10, 515, 627-29, 661, 674,

---

[6]Dr. Mossler evaluated Plaintiff in March 2011, and indicated in the summary section of the evaluation form, "[Patient] with depression & anxiety that is quite debilitating to his daily function."  R. 670.  Dr. Mossler's evaluation noted that Plaintiff reported he was "sad, crying all the time," and "he is paranoid that people are talking about him and looking at how thin he is. He rarely leaves home. Pt. reports this is uncharacteristic for him. Recent death of his relationship partner." R. 668-70.

689, 703).  The Plaintiff testified at the final hearing as to being dizzy and disoriented all the time, having chest pain which increased with strenuous activities such as lifting, and bending, having trouble sleeping at night, needing to take naps during the day, having trouble doing household chores and shopping, and needing assistance from his mother to function.  R 35- 42. Plaintiff also stated on SSA forms that he was fatigued, lethargic and nonproductive, experienced chest pain, shortness of breath, dizziness and lightheadedness, diarrhea, nausea, vomiting, headaches, insomnia and continual feeling of illness or discomfort, in having overall problems during the day functioning. Doc. 26 (citing R 176-80, 182-88, 190-94, 328).

Plaintiff cites the opinion of the  non-examining state agency psychologist[7] who opined that the Plaintiff had moderate limitations in the ability to understand or remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal work week and workday without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number of rest periods, ability to get along with coworkers and peers without distracting them or exhibiting behavioral extremes, maintain socially appropriate behavior, and respond appropriately to changes in the work setting, and set realistic goals or make plans independently of others.  R 417-18.  The same psychologist also indicated moderate restrictions in Plaintiff's activities of daily living, difficulties in maintaining social functioning, difficulties in maintaining concentration, persistence or pace.  R. 421-34.

In discussing Plaintiff's RFC, the ALJ stated with regard to Plaintiff's credibility that "When the record is considered in its entirety, though the claimant may have some discomfort, he does not have the type of pain which would preclude him from performing work as accommodated for in the claimant's residual functional capacity as established above." R. 18.  The ALJ found Plaintiff was

---

[7]Plaintiff refers to the Mental Residual Functional Capacity Assessment as being completed by the consultative psychological examiner, Dr. Jeff Oatley, (Doc. 26 at 15); however, it was actually completed by the non-examining state agency psychologist, Dr. Anne-Marie Bercik. *See* R. 417-19.

"only mildly limited by his mental impairment. The claimant has not provided convincing details regarding factors which precipitate the allegedly disabling symptoms. The claimant's activities of daily living and the medical evidence of record suggest that the claimant can sustain a greater capacity than he described at the hearing or in some of his reports to the state agencies." R. 19.  The ALJ determined that "given the evidence", she concluded that Plaintiff had not satisfied his burden to show he cannot work because "neither the severity of his impairments nor the extent of his limitations were supported by the objective medical evidence of record." R. 19.

Given that the case is to be remanded for reconsideration of Plaintiff's other medical records, on remand the ALJ will also more fully and precisely address Plaintiff's memory and concentration limitations, whether such limitations are the side effects of medication, and order a new consultative mental health examination if necessary.  In giving this direction for further proceedings, the Court notes that determinations as to Plaintiff's credibility and mental limitations are for the ALJ to make, based on the legal principles discussed above.  Any such mental health limitations will be included by the ALJ in any hypothetical to the VE, consistent with *Winschel*, and will be considered by the ALJ in determining Plaintiff's credibility.

## IV.   CONCLUSION

For the reasons set forth above, the ALJ's decision is not consistent with the requirements of law and is not supported by substantial evidence.  Accordingly, the Court **REVERSES and REMANDS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on March 8, 2013.

_David A. Baker_

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record